THIRD DIVISION
November 1, 2006

No. 1-05-1323

| | | |
|---|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| DEIRDRE K. MANNA, Acting Director of Insurance for the | ) | |
| State of Illinois, and THE ILLINOIS DEPARTMENT OF | ) | |
| FINANCIAL AND PROFESSIONAL REGULATION, | ) | |
| Division of Insurance, | ) | Honorable |
| | ) | Anthony L. Young, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

The appeal concerns the constitutionality of the State of Illinois's "retaliatory tax" on "alien" insurance companies, insurance companies incorporated or organized under the laws of any country other than the United States (215 ILCS 5/2(h) (West 2004)). Plaintiff Sun Life Assurance Company of Canada (Sun Life) is a life insurance corporation organized under the laws of Canada. Sun Life does insurance business in Illinois and is, therefore, considered an "alien" insurance company under the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 2004)) (the Code). Sun Life asserts that imposition of a retaliatory tax on an alien insurance company violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2), the equal protection

clauses of the United States Constitution (U.S. Const., amend. XIV) and Illinois Constitution (Ill. Const. 1970, art. I, §2) (collectively, the equal protection clause) and the foreign commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3). We affirm.

Background

Pursuant to the Code, three types of insurance companies can do business in Illinois: domestic companies, organized and incorporated under the laws of Illinois (215 ILCS 5/2(f) (West 2004)); "foreign" companies, incorporated or organized under the laws of any state of the United States other than Illinois (215 ILCS 5/2(g) (West 2004)); and "alien" companies. Domestic, foreign and alien insurance companies pay the same privilege tax to do business in Illinois. 215 ILCS 5/409, 5/413 (West 2004). However, in addition to the privilege tax, foreign and alien insurance companies may be subject to a retaliatory tax. 215 ILCS 5/444.1 (West 2004).

Section 444(1) of the Code (215 ILCS 5/444(1) (West 2004)) is titled "Retaliation." It provides that, if the laws of any other state or country require that Illinois companies, as a condition of doing business in that state or country, pay a greater amount of penalties, fees, charges or taxes than Illinois requires in the aggregate for similar purposes of foreign or alien companies to do business in Illinois, then Illinois will assess foreign or alien companies incorporated under the laws of that state or country penalties, fees, charges and taxes in amounts equal to those required in the aggregate for like purposes of Illinois companies doing business in such state or country. 215

ILCS 5/444(1) (West 2004). Essentially, if a foreign or alien insurance company would pay less for the privilege of doing business in Illinois than an Illinois insurance company would be required to pay to do business in the foreign or alien company's home state or country, Illinois will retaliate by requiring the foreign or alien company to make up the difference.

Pursuant to the retaliatory tax section of the Illinois Administrative Code (50 Ill. Adm. Code 2515.10 *et seq.*, amended at 24 Ill. Reg. 10228, eff. July 1, 2000), retaliatory tax is due from a foreign or alien insurance company if the sum of its "State of Illinois' Basis" is less than the sum of its "State of Incorporation's Basis." 50 Ill. Adm. Code 2515.50, amended at 24 Ill. Reg. 10228, eff. July 1, 2000. Defendant the Division of Insurance of the Illinois Department of Financial and Professional Regulation (the Department) calculates the state of incorporation's basis as "the sum of the amounts that an Illinois domiciled company would have PAID in the foreign or alien domiciliary state or country if it transacted similar operations there as did the foreign or alien company in Illinois for [subsequently enumerated fees and taxes] in the foreign or alien company's state or country of domicile." 50 Ill. Adm. Code. 2515.50(c), amended at 24 Ill. Reg. 10228, eff. July 1, 2000.

Sun Life consistently paid the privilege tax for the years it operated in Illinois but never paid a retaliatory tax. Canadian law does not impose a premium tax on life insurance companies. Sun Life's Illinois privilege and retaliatory tax statements show that Sun Life would owe no Canadian tax on its life insurance business in Canada.

1-05-1323

Because Sun Life owed tax and fees under the Illinois tax law but not under the Canadian tax law, it determined that its Canadian tax basis was not higher than its Illinois tax basis and that it owed no retaliatory tax.

However, section 2515.40 of Title 50 of the Administrative Code defines "State of Incorporation's Basis" as:

"the taxes, fees and charges that would have been assessed against and paid by an Illinois company if it had similar operation in the state of domicile of the foreign or alien company, as the foreign or alien company had in Illinois, as described in subsection 2515.50(c) of this Part. *If applicable, the state of domicile for the alien company may mean its port or state of entry * * * .*"  (Emphasis added.)  50

1-05-1323

Ill. Adm. Code 2515.40, amended at 24 Ill. Reg. 10228, eff. July 1, 2000.[1]

Sun Life's port of entry into the Unites States was the State of Michigan. Applying

section 2515.40, the Department determined that, for retaliatory taxation purposes, Sun

Life's state of incorporation basis would be determined by the tax of Michigan, Sun Life's

---

[1] Section 2515.40 of Title 50 of the Administrative Code defines "State of Illinois' Basis" as "the taxes, fees and charges in the aggregate assessed against and paid by a company transacting insurance business in the State of Illinois as described in subsection 2515.50(b) of this Part." 50 Ill. Adm. Code. 2515.40, amended at 24 Ill. Reg. 10228, eff. July 1, 2000.

state of entry. In the aggregate, Michigan imposes higher taxes and fees on Illinois companies doing insurance business in Michigan than Illinois charges on Michigan companies doing the same insurance business in Illinois. Accordingly, basing its retaliatory tax audit on Michigan tax, the Department assessed Sun Life $4,010,743 in retaliatory tax for 1997 through 2003.

Sun Life disputed that it owed retaliatory tax, arguing that imposition of the tax on alien insurance companies was unconstitutional. Sun Life filed a declaratory judgment action in the circuit court of Cook County, seeking a finding that the State of Illinois is not authorized to impose a discriminatory retaliatory tax on insurance business conducted by alien companies in Illinois. Sun Life argued that imposition of such a tax violates the uniformity clause of the Illinois Constitution, the equal protection clause and the foreign commerce clause.[2] Sun Life filed a motion for summary judgment in the

---

[2] Constitutional issues cannot be decided in an administrative hearing before the Department. 50 Ill. Adm. Code 2500.50(b)(4), adopted at 22 Ill. Reg. 290, eff. December 21, 1998. Concerned that a complaint for administrative review from an adverse decision of the Department would not preserve its constitutional claims, Sun Life opted to file a declaratory judgment action in the circuit court seeking resolution of its constitutional challenge. A plaintiff challenging the validity of a statute on its face need not exhaust administrative remedies prior to filing a declaratory judgment action because a facial attack on the constitutionality of a statute is not dependent on the administrative record for its resolution. *Arvia v. Madigan*, 209 Ill.2d 520, 532-33, 809

action and the Department filed a cross-motion for summary judgment.  On March 23,

2005, the court granted the Department's motion for summary judgment and denied

Sun Life's motion.  Sun Life timely appeals, seeking reversal of the court's order and a

declaration that, as an alien insurance company, Sun Life is not subject to the retaliatory

tax.[3]

---

N.E.2d 88, 97 (2004).

[3] The issue of whether the Department correctly determined that Michigan law

should be used to determine whether Sun Life owes a retaliatory tax is not before us.

Sun Life argues that the court erred in granting summary judgment to the Department and denying Sun Life's motion for summary judgment because the retaliatory tax violates the uniformity clause, the equal protection clause and the foreign commerce clause. The parties agree that there are no genuine issues of material fact. The only issue is a question of law: whether the State of Illinois may constitutionally impose a retaliatory tax on an alien insurance company that it does not impose on a domestic insurer.[4] We review both a trial court's decision on a motion for summary judgment and the constitutionality of a statute *de novo*. *City of Chicago v. Holland*, 206 Ill. 2d 480, 488, 795 N.E.2d 240, 245 (2003).

## Uniformity Clause

---

[4] Sun Life does not dispute Illinois's right to impose the retaliatory tax on foreign insurance companies, only its right to impose the tax on alien insurance companies such as Sun Life.

The uniformity clause provides that, "[i]n any law classifying the subjects or objects of nonproperty taxes or fees, the classes shall be reasonable and the subjects or objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, §2.

The tax classification at issue here consists of all insurance companies covered by the Code: domestic, foreign and alien companies doing insurance business in Illinois. The class does not, as the Department occasionally appears to assume, consist solely of all alien insurers doing business in Illinois. There is no discrimination in the retaliatory tax statute's treatment of alien insurers. The statute applies to all alien insurers uniformly. It does not discriminate against one alien company in favor of another or against companies from a particular country. "The retaliatory tax is not imposed on [alien] corporations *qua* [alien] corporations * * *; it is imposed only on corporations whose home States impose more onerous burdens on [Illinois] insurers than [Illinois] otherwise would impose on those corporations." *Western & Southern Life Insurance Co. v. State Board of Equalization of California*, 451 U.S. 648, 670 n.23, 68 L. Ed. 2d 514, 532 n.23, 101 S. Ct. 2070, 2084 n.23 (1981). Whether an alien insurer must actually pay a retaliatory tax depends entirely on the tax laws of its own state of incorporation, not on the retaliatory tax statute. In contrast, the statute does not apply uniformly to all members of the class consisting of all insurance companies covered by the Code. Rather, the tax only applies to foreign and alien insurance companies. It does not apply to domestic insurance companies.

9

As the party attacking the tax classification, Sun Life is not required to negate every conceivable basis which might support it. *Milwaukee Safeguard Insurance Co. v. Selcke*, 179 Ill. 2d 94, 98, 688 N.E.2d 68, 70 (1997). Instead, upon a good-faith uniformity challenge by Sun Life, the Department, as the taxing body, bears the initial burden of producing a justification for the classifications. *Milwaukee Safeguard Insurance Co.,* 179 Ill. 2d at 98, 688 N.E.2d at 71. Sun Life then has the burden of persuading the court that the justification offered is unsupported by the facts or insufficient as a matter of law. *Milwaukee Safeguard Insurance Co.,* 179 Ill. 2d at 98-99, 688 N.E.2d at 71.

Sun Life challenged the tax as discriminatory and violative of the uniformity clause because it is imposed on some subjects of the class but not on others, arguably favoring domestic insurance companies over alien insurance companies even though there is no real and substantial difference between alien insurance companies and domestic insurance companies. In response to this good faith uniformity challenge, the Department argued the classification was justified because (1) there was a difference between domestic and alien insurers because alien insurers are more difficult to regulate, a distinction found valid in *Milwaukee Safeguard Insurance Co.,* 179 Ill. 2d at 101, 688 N.E.2d at 72; and (2) the purpose of imposing the retaliatory tax is the legitimate state purpose "to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes," quoting *Western & Southern Life Insurance Co.*, 451 U.S. at 668, 68 L. Ed. 2d at 531, 101 S. Ct.

at 2083.

In reviewing the constitutionality of a tax classification, the threshold requirement is that the taxation scheme "be motivated by a legitimate, permissible State purpose." *Springfield Rare Coin Galleries, Inc. v. Johnson*, 115 Ill. 2d 221, 232, 503 N.E.2d 300, 305 (1986) (uniformity challenge to Illinois's tax statute excluding Republic of South Africa from tax exemption). In *Western & Southern Life Insurance Co.,* the United States Supreme Court noted that a retaliatory tax's " 'ultimate object is not to punish foreign corporations doing business in the state, or retort the actions of the foreign state * * * but to induce such foreign state to show the same consideration to corporations of the enacting state doing business therein as is shown to corporations of such foreign state doing business in the enacting state.' " *Western & Southern Life Insurance Co.*, 451 U.S. at 668-69, 68 L. Ed. 2d at 531, 101 S. Ct. at 2083, quoting Annotation, *Constitutionality, Construction, Operation, and Effect of Retaliatory Statutes Against Foreign Corporations Doing Business Within the State*, 91 A.L.R. 795 (1934). *Western & Southern* concerned the State of California's imposition of a retaliatory tax on an Ohio insurer doing business in California. In conducting an equal protection analysis of the tax, the court found that there was "no doubt that promotion of domestic industry by deterring barriers to interstate business is a legitimate state purpose." *Western & Southern Life Insurance Co.*, 451 U.S. at 671, 68 L. Ed. 2d at 532, 101 S. Ct. at 2084. The fact that California sought to promote its insurance industry by influencing the policies of other states did not render this purpose illegitimate. *Western & Southern Life*

*Insurance Co.*, 451 U.S. at 671, 68 L. Ed. 2d at 532, 101 S. Ct. at 2084. Because the Court concluded that California's retaliatory tax was rationally related to this purpose, it held that the tax met the requirements of the federal equal protection clause. *Western & Southern Life Insurance Co.*, 451 U.S. at 672-74, 68 L. Ed. 2d at 532-35, 101 S. Ct. at 2084-86.

In *Mutual Life Insurance Co. of New York v. Washburn*, 137 Ill. 2d 312, 561 N.E.2d 29 (1990), our supreme court followed *Western & Southern Life Insurance Co.* and determined that the Department's application of the Illinois retaliatory tax statute to a New York life insurance company met the requirements of the equal protection clause. *Mutual Life Insurance Co. of New York*, 137 Ill. 2d at 330, 561 N.E.2d at 38-39. It also determined that it did not infringe on the dictates of the uniformity clause. *Mutual Life Insurance Co. of New York*, 137 Ill. 2d at 332, 561 N.E.2d at 39. The plaintiff had argued that the retaliatory tax, as applied by the Department, violated the equal protection and uniformity provisions of the Illinois Constitution because it taxed some New York companies and not others.

Generally, in order to survive scrutiny under the uniformity clause, a nonproperty tax classification such as the one at issue here must (1) be based on a real and substantial difference between the subjects taxed and those not taxed and (2) bear some reasonable relationship to the object of the legislation or to public policy. *Milwaukee Safeguard Insurance Co. v. Selcke*, 179 Ill. 2d 94, 98, 688 N.E.2d 68, 70 (1997); *Mutual Life Insurance Co. of New York,* 137 Ill. 2d at 331, 561 N.E.2d at 38.

The *Mutual Life Insurance Co. of New York* court determined, however, that it need not engage in this analysis of the retaliatory tax statute because the tax applied uniformly to all New York companies and there was, therefore, not more than one classification at issue. *Mutual Life Insurance Co. of New York,* 137 Ill. 2d at 331, 561 N.E.2d at 38. It was the New York taxing provisions and not the retaliatory statute which classified New York companies. Whether a particular New York company was subject to the retaliatory tax was dependent on the vagaries of the New York tax laws and the business experiences of the different insurance companies, which resulted in differing tax bases for the companies in New York. Because the plaintiff presented no compelling reason to find otherwise, the Department's application of the retaliatory statute did not infringe on Illinois's uniformity requirement. *Mutual Life Insurance Co. of New York,* 137 Ill. 2d at 331-32, 561 N.E.2d at 38.

Citing *Western & Southern* and *Mutual Life Insurance Co. of New York,* Sun Life concedes the right of Illinois to impose a retaliatory tax on foreign insurers doing business in Illinois but argues it does not have the same right regarding alien insurers. However, as Sun Life points out, both cases concern interstate commerce and not international commerce. Can the legitimate principal purpose of retaliatory taxes, "to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes" (*Western & Southern Life Insurance Co.,* 451 U.S. at 668, 68 L. Ed. 2d at 531, 101 S. Ct. at 2083), be reframed in an international context without coming into conflict with the plenary and exclusive power of

the federal government to establish and carry out foreign policy (*Springfield Rare Coin*, 115 Ill. 2d at 233, 503 N.E.2d at 305)?  Can a state impose a retaliatory tax in order to, paraphrasing *Western & Southern Life Insurance Co.*, promote the international business of domestic insurers by deterring other countries from enacting discriminatory or excessive taxes when " '[p]ower over external affairs is not shared by the States; it is vested in the national government exclusively' " (*Springfield Rare Coin*, 115 Ill. 2d at 233, 503 N.E.2d at 305, quoting *United States v. Pink*, 315 U.S. 203, 233, 86 L. Ed 796, 819, 62 S. Ct. 552, 567 (1942))?

The United States must speak with "one voice" when dealing with foreign nations, otherwise foreign policy initiatives by a single state could embroil the entire nation in serious international disputes.  *Springfield Rare Coin*, 115 Ill. 2d at 233, 503 N.E.2d at 305.  Foreign policy actions by individual states "lead to a lack of uniformity" and the power of the federal government must, therefore, "be left free from local interference."  *Springfield Rare Coin*, 115 Ill. 2d at 233, 503 N.E.2d at 306.  Illinois's desire to promote its insurance industry by influencing the policies of other countries arguably flies in the face of the federal government's exclusive power over foreign affairs.

Nevertheless,

"Despite these broad principles, it would be an obvious oversimplification and wrong to assert that no State law which has any impact whatsoever upon foreign relations may ever stand.  For example, the fact that Illinois imposes

14

taxes upon imported products generally can be said to have some effect on foreign nations. Clearly, such incidental, evenhanded burdens do not rise to the level of unconstitutionality. [Citation.]  Something more than an indirect or incidental effect is necessary."  *Springfield Rare Coin*, 115 Ill. 2d at 233, 503 N.E.2d at 306.

The precise line of demarcation between incidental and unconstitutional intrusions into foreign affairs is difficult to draw, but general principles to consider are whether the challenged classification (1) is motivated by disapproval of a nation's political and social policies, (2) attempts to make a political statement, (3) is targeted at a single foreign nation or (4) is effectively an economic boycott or an embargo. *Springfield Rare Coin*, 115 Ill. 2d at 236, 503 N.E.2d at 307 (invalidating statutory amendment exempting from retailer's occupancy tax gold and silver coins issued by Illinois, the United States or any other foreign country *except the Republic of South Africa*; court held exclusion was essentially an economic boycott targeted at a single nation, motivated solely by disapproval of South Africa's policies, and created a risk of conflict between nations).

Here, the retaliatory tax appears to be merely a permissible incidental intrusion on foreign affairs.  International commerce is, of course, affected when the Department imposes a retaliatory tax on an alien company.  Imposition of that tax necessarily involves a monetary impact on the alien insurer and a resultant monetary impact on the insurer's funds in its home country.  However, that impact on the foreign country is

incidental.  The tax is not directed at one particular nation, being applied to all alien insurers equally.  It is not a boycott of alien insurers and is not intended to keep them from doing business in Illinois because of their home country's political or social policies.  Accordingly, because the impact of the retaliatory tax is incidental, Illinois' imposition of the tax is not an unconstitutional intrusion into foreign affairs.

Equal Protection Clause

The equal protection clause provides that the states may not " 'deny to any person within [their] jurisdiction the equal protection of the laws,' " but does allow reasonable classifications among such persons.  *Western & Southern Life Insurance Co.*, 451 U.S. at 656-57, 68 L. Ed. 2d at 523, 101 S. Ct. at 2077, quoting U.S. Const., amend. XIV.  "[T]he uniformity clause was intended to encompass the equal protection clause and add to it even more limitations on government."  *Geja's Café v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 247, 606 N.E.2d 1212, 1215 (1992).  Because "[t]he uniformity clause imposes more stringent limitations than the equal protection clause on the legislature's authority to classify the subjects and objects of taxation," " '[i]f a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause.' " *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 249-50, 665 N.E.2d 1246, 1251 (1996), quoting *Geja's Café*, 153 Ill. 2d at 247, 606 N.E.2d at 1215.  Accordingly, because the retaliatory tax on alien insurers is valid under the uniformity clause, it is also valid under the equal protection clause.  See *Allegro Services, Ltd.*, 172 Ill. 2d at 250, 665 N.E.2d at 1251.

Foreign Commerce Clause

The commerce clause of the U.S. Constitution provides that "Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., art. I, § 8, cl. 3. The provision providing Congress's power to regulate commerce with foreign nations is referred to as the foreign commerce clause. Generally, in order for a state to tax goods in interstate commerce in compliance with the domestic commerce clause, it must establish that the tax "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 51 L. Ed. 2d 326, 331, 97 S. Ct. 1076, 1079 (1977). When a state seeks to tax foreign commerce, it must satisfy the four-part *Complete Auto Transit* test and then relieve two additional concerns: the enhanced risk of multiple taxation and the need for the federal government to "speak with one voice" when regulating commerce with foreign nations. *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 449 n.14, 60 L. Ed. 2d 336, 348 n.14, 99 S. Ct. 1813, 1822 n.14 (1979). Sun Life argues that the retaliatory tax on alien insurers fails to meet the necessary requirements because it (1) discriminates against international commerce by imposing a tax on alien insurers, in violation of the third criterion of the *Complete Auto Transit* test; and (2) prevents the federal government from speaking with one voice when regulating international commerce by attempting to influence the tax policies of other nations, in violation of the

17

second criterion of the *Japan Line* test.   The Department responds that the McCarran-Ferguson Act (15 U.S.C. §1011 *et seq.* (2000)) (the Act) operates to exempt a state's taxation of insurance from application of the commerce clause, foreign or otherwise. The Act states: "Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."  15 U.S.C. §1011 (2000). To that end, the Act provides:

"(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.  (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended [15 U.S.C. 41 *et seq.* (2000)], shall be applicable to the business of insurance to the extent that such business is not regulated by State law."  15 U.S.C. §1012 (2000).

In *Western & Southern Life Insurance Co.*, the U.S. Supreme Court held that

"Congress removed all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act." *Western & Southern Life Insurance Co.*, 451 U.S. at 653, 68 L. Ed. 2d at 520, 101 S. Ct. at 2075. The Court held that California's retaliatory tax on an Ohio insurance company did not violate the commerce clause because "the McCarran-Ferguson Act *removes entirely any Commerce Clause restriction* upon California's power to tax the insurance business." (Emphasis added.) *Western & Southern Life Insurance Co.*, 451 U.S. at 655, 68 L. Ed. 2d at 522, 101 S. Ct. at 2076. Sun Life argues, however, that the McCarran-Ferguson Act only operates to remove domestic commerce clause restrictions upon the states' power to tax the insurance business and does not remove foreign commerce clause restrictions. There is no such limitation in the Act. Although *Western & Southern Life Insurance Co.* is an interstate commerce case, its pronouncement that the McCarran-Ferguson Act "removes entirely any" commerce clause restrictions on a state's taxation of insurance is categorical. *All* such restrictions are eliminated by the Act. If Congress intended that states could only tax interstate commerce, it failed to say so and the United States Supreme Court has yet to interpret the Act in this manner.

Moreover, even if the McCarran-Ferguson Act does not operate to remove foreign commerce clause restrictions from state taxation of alien insurers, the retaliatory tax does meet the criteria enunciated in *Complete Auto Transit* and *Japan Line*, notwithstanding Sun Life's assertion to the contrary. As discussed previously, the

19

retaliatory tax is valid under the uniformity and equal protection clauses, its treatment of alien insurers is not discriminatory given its legitimate state purpose and its impact on the federal government's ability to speak with one voice regarding foreign commerce is negligible. Sun Life is correct that the McCarran-Ferguson Act does not preempt the application of the Constitution and other federal laws to state taxation of insurance. *State Board of Insurance v. Todd Shipyards Corp.*, 370 U.S. 451, 8 L. Ed. 2d 620, 82 S. Ct. 1380 (1962). However, the retaliatory tax more than meets constitutional and federal law requirements and, therefore, does not violate the foreign commerce clause.

For the reasons stated above, we affirm the decision of the circuit court.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.