Stephen W. **ROBINSON**, Appellant

v.

**MATTHEWS INTERNATIONAL CORPORATION.**

No. 09–1965.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 28, 2010.

Filed: March 8, 2010.

Timothy M. Kolman, Esq., Timothy M. Kolman & Associates, Penndel, PA, for Appellant.

Christopher L. Cicconi, Esq., Andrew T. Quesnelle, Esq., Patrick W. Ritchey, Esq., Reed Smith, Pittsburgh, PA, for Matthews International Corporation.

Before: FUENTES and FISHER,

Circuit Judges, and DIAMOND,* District Judge.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Steven W. Robinson ("Robinson") appeals from an order of the District Court granting a motion for summary judgment in favor of defendant, Matthews International Corporation ("Matthews"), holding that Matthews did not violate Robinson's rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. For the reasons stated herein, we will affirm the judgment of the District Court.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of the case. Therefore, we will set forth only those facts necessary to our analysis.

The York Group, Inc. ("York Group") hired Robinson as the Bronze Segment Controller at its Kingwood, West Virginia plant on January 3, 2000, and he continued in this capacity when the York Group was acquired by Matthews. Robinson was subsequently promoted to the operations controller position for Matthews's casket division in Pittsburgh, PA, and was supervised by David Beck ("Beck"). At the completion of Robinson's first year as operations controller, Beck administered Robinson's performance evaluation for the fiscal year 2003. Robinson's overall performance was rated, under Matthews's performance rating system, in the "competent (meets standard)" range.

In September 2003, Beck was promoted within Matthews, and Jonathan Maurer ("Maurer") took over as Robinson's immediate supervisor. Maurer, however, left Matthews after only six months; thereafter, Robinson reported to Joseph Bartolacci ("Bartolacci"). In his 2004 fiscal year performance evaluation, Bartolacci rated Robinson's overall performance as "adequate (below standard)" and noted that Robinson did not demonstrate the expected leadership levels on the business plan, the annual business review, and during monthly forecast meetings.

For financial reasons, in early summer 2004, Matthews decided to consolidate the responsibilities of the financial controller, the manager of financial analysis, and the operations controller, which was Robinson's position, into a single "division controller" position and to liquidate the other positions. On November 5, 2004, Bartolacci met with Robinson and informed him that his position was being eliminated, effective at the end of the year, and that he was not being considered for the newly created division controller position. At this meeting, Bartolacci extended an offer to Robinson for the wood plant controller position at Matthews's plant in York, Pennsylvania. The wood plant controller position would have constituted a demotion for Robinson, whereby his responsibilities would have been reduced and his annual pay cut. Robinson declined the offered position and continued work in his current position until he was terminated by Matthews on January 31, 2005. Robinson was fifty-one years of age at the time of his termination.

Steven Nicola ("Nicola"), the Matthews official responsible for filling the division controller position, believed, based in part on the opinions of other Matthews officials,

* Honorable Paul S. Diamond, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

that Robinson did not possess sufficient leadership, initiative, or analytical skills necessary for the new position. The division controller position was ultimately offered to, and accepted by Jim Kenna ("Kenna"). Kenna was thirty-six years old at the time he was hired and held a bachelor's degree in accounting. Kenna's qualifications included general accounting and operations experience, as well as experience performing audits. Robinson, on the other hand, had earned a Masters of Business Administration degree with double specializations in finance and management. He had experience in the payroll and accounting departments of other companies, as well as experience as a bronze segment controller and casket division operations controller for Matthews.

Following his termination, Robinson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was discriminated against based on his age. Before the EEOC, Robinson contended that he was not given the opportunity to apply for the division controller position, that the position ultimately went to the younger Kenna, and that this constituted age discrimination in violation of the ADEA. The EEOC subsequently issued Robinson a right to sue letter.

On November 13, 2006, Robinson filed the instant lawsuit alleging age discrimination under the ADEA, sex discrimination under Title VII, constructive discharge under both statutes, and several related common law claims. Matthews filed a motion for summary judgment on all counts, and, on March 20, 2009, the District Court granted the motion. Robinson filed a timely notice of appeal. Robinson's age discrimination claim under the ADEA is the only one before us in this appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of a grant of summary judgment is plenary. *Gardner v. State Farm Fire & Cas. Co.,* 544 F.3d 553, 557 (3d Cir.2008). In conducting our review, we must view the underlying facts and all reasonable inferences in the light most favorable to the party opposing the motion. *Fasold v. Justice,* 409 F.3d 178, 180 (3d Cir.2005). Summary judgment is only proper when there is no genuine dispute as to material facts, and the moving party is entitled to judgment as a matter of law. *Id.* at 183.

## III.

Recognizing that it is often difficult for a plaintiff to prove illegal discrimination through direct evidence, the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), constructed a framework under which a plaintiff may show that an adverse employment action was simply a pretext for discrimination. The *McDonnell Douglas* framework establishes a system whereby burdens of proof are allocated in employment discrimination suits. The plaintiff must carry the initial burden of establishing a prima facie case of unlawful discrimination. *Id.* at 802. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the challenged action. *Id.* If the employer can articulate such a reason, then the burden shifts back to the plaintiff to show that the defendant's reason was a pretext for discrimination. *Id.* at 804. The ultimate burden of persuasion that the employer intentionally discriminated against the plaintiff "remains at all times with the plaintiff." *Texas Dept. of*

*Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In order to establish a prima facie case of age discrimination for failure to promote, the plaintiff must establish that: (1) he is age forty or older; (2) he applied for and is qualified for the job; (3) despite his qualifications he was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. *Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 698 (3d Cir.1995). The District Court held that Robinson established a prima facie case, and Matthews does not contest that finding in this appeal. Therefore, for our purposes, Robinson has met the burden of establishing a prima facie case under the ADEA.

The burden then shifts to Matthews to provide evidence that Robinson was rejected, or Kenna was preferred, for the division controller position for reasons that are legitimate and nondiscriminatory. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. This burden is deemed satisfied if the employer introduces evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the challenged employment decision. The employer is not required to prove that this nondiscriminatory reason actually motivated the action in order to shift the burden back to the plaintiff. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). Matthews maintains that Robinson was performing below expectations in his current position and that he lacked the leadership ability, initiative, and analytical skills necessary to perform as division controller. Taken as true, these reasons would certainly be legitimate grounds not to promote Robinson. We conclude that Matthews has met its burden, and thus the burden of showing pretext shifts to Robinson.

The standard for determining pretext was set forth by this Court in *Fuentes.* In order for a plaintiff to defeat summary judgment, the plaintiff must either (i) discredit the proffered reasons, either circumstantially or directly, or (ii) adduce evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Fuentes,* 32 F.3d at 764. A successful showing of pretext must "allow the factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* A plaintiff may not establish pretext by simply showing that the employer's decision was wrong or mistaken because the main issue is whether the employer acted in a discriminatory manner. *Id.* at 765.

Robinson's assertions center on the first prong of the *Fuentes* test: an attempt to discredit Matthews's claim that the true reason for not promoting Robinson was that his performance did not warrant the promotion. Robinson makes five arguments to discredit Matthews's proffered reasons, and we will consider each of them in turn.

First, Robinson argues that his performance evaluations do not support Matthews's assertion that his performance was below expectations. He states that his performance ratings in fiscal year 2003 of "competent (meets standard)" and in fiscal year 2004 of "adequate (below standard)" are indicative of good performance. Robinson also cites the individual categories in his performance evaluations where he scored well as evidence of good performance. Ultimately, however, Robinson's own view of his performance is irrelevant; instead, what matters is the perception of the employer. *Billet v. CIGNA Corp.,* 940

F.2d 812, 825 (3d Cir.1991) *rev'd on other grounds.* The comments from Robinson's supervisors, combined with the downward trajectory of his performance evaluations, belie Robinson's assertions. Matthews has clearly laid out that an "adequate" review equates with "below standard" performance. Based on the performance evaluation alone, Matthews's decision not to promote Robinson because his ratings demonstrated only "adequate" performance was a reasonable one, and we may not second guess this business decision. *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 527 (3d Cir.1992).

Robinson's second argument is that Matthews should have considered the difficult circumstances under which he assumed the operations controller position when reviewing his performance. Specifically, Robinson claims that his predecessor left the position before he could be adequately trained for the new position. It follows logically that any difficulties stemming from learning a new job would be ironed out in the first year, and that evidence of these early difficulties would be shown by an improvement, not a decline, in performance as those difficulties dissipate. However, Robinson's scores on his performance evaluations actually declined from fiscal year 2003, when he was rated as "competent (meets standard)," to fiscal year 2004, when he was rated as "adequate (below standard)." This decline in performance following his first year in the position actually supports Matthews's non-discriminatory reasons for terminating Robinson.

Robinson next argues that Matthews's failure to inform him of any problems with his performance is evidence of discriminatory pretext. While Robinson may not have been contacted routinely regarding the level of his performance, his annual evaluations indicated that he was not performing at an above average level and that his performance was not improving. However, even if no notice had been given, lack of information about performance problems does not constitute evidence of pretext. *Hague v. Thompson Distrib. Co.,* 436 F.3d 816, 827 (7th Cir.2006).

The fourth argument Robinson advances is that pretext has been established by certain inconsistencies in the testimony of those in charge of hiring the division controller. Specifically, Robinson notes that Beck stated that he had no part in the division controller hiring process while Bartolacci and Nicola stated that Beck did have some input in the process. Robinson makes no allegation, however, that the inconsistencies in the testimony cited were evidence of discriminatory animus. In order to carry the burden of showing pretext, a plaintiff's evidence must allow a factfinder "reasonably to infer that each of the employer's proffered non-discriminatory reasons ... was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes,* 32 F.3d at 764. Inconsistencies over whether Beck had any part in the hiring of the division controller cannot give rise to an inference that Matthews's decision not to promote Robinson was motivated by considerations other than his performance. These inconsistencies are not evidence that could permit a factfinder to conclude that Matthews's stated reason was "unworthy of credence." *Id.* at 765.

Robinson finally argues that he is more experienced than Kenna. Robinson does indeed have more experience working in the field and a higher level of education than Kenna, but this is not necessarily evidence of pretext. In attempting to discredit the employer's proffered reason, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is wheth-

er discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* The decision to hire Kenna for the division controller position was ultimately a business decision, and simply because Robinson thinks he is more qualified for the division controller job does not entitle him to the position nor show discriminatory animus on the part of Matthews.

Since Robinson cannot point to evidence discrediting Matthews's proffered legitimate reason for failing to promoting him, he cannot satisfy the first prong of the *Fuentes* analysis. Therefore, Robinson has failed to satisfy his burden of production under the *McDonnell Douglas* framework, and this failure entitles Matthews to judgment as a matter of law.

### IV.

For all the foregoing reasons, we will affirm the District Court's order for summary judgment in favor of Matthews.